UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRYCE BELL,

        Petitioner,

v.

PAUL RENICO,

        Respondent.

_____/

Case No. 2:03-cv-75141

HONORABLE AVERN COHN

## MEMORANDUM AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS
## AND
## DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

### I.  Introduction

     This is a habeas case under 28 U.S.C. § 2254.  Petitioner Bryce Bell (Petitioner) is a state prisoner who claims that he is incarcerated in violation of his constitutional rights.  For the reasons that follow, Petitioner is not entitled to habeas relief on any of his claims because they are procedurally defaulted and he has failed to overcome the default.  Accordingly, the petition will be denied.  As jurists of reason could not find this conclusion debatable or wrong, the Court will decline to issue a certificate of appealability.

### II.  Procedural History

     Petitioner was convicted of second degree murder and felony firearm on June 17, 1999, following a nine day bench trial.  On July 23, 1999, Petitioner was sentenced to eighteen to forty years on the murder conviction consecutive to two years on the felony firearm conviction.

Petitioner filed an appeal of right to the Michigan Court of Appeals, raising the following claims:

I.  Defendant was denied his right to a fair trial when the trial court initially ruled that it would admit into evidence the preliminary examination transcript of a jailhouse informant; the defendant relied upon the ruling in fashioning a defense; but in rendering its decision the court stated it would not take into account the informant's prior testimony

II.  Defendant was denied his right to due process and a fair trial when the prosecution failed to disclose exculpatory evidence as to him, and exculpatory evidence as to the co-defendant, which if known to defendant prior to trial defendant would have enforced his right to a jury trial

III.  Defendant's federal and state constitutional right to be free from a conviction unless the prosecution proves each element of the offense beyond a reasonable doubt was violated as the trial court engaged in an improper compromise verdict

IV. The evidence was insufficient to convict defendant of second degree murder and felony firearm based upon the testimony of a jailhouse informant who had a significant record involving crimes of theft or dishonesty and whose version of the offense did not conform to the facts of the case

The Michigan Court of Appeals affirmed Petitioner's convictions.  *People v. Bell*, No. 222680 (Feb. 1, 2002).  The Michigan Supreme Court denied leave to appeal. *People v. Bell*, 467 Mich. 881 (Sept. 30, 2002).

Petitioner then filed a petition for writ of habeas corpus, asserting the four claims that he asserted in his direct appeal, and, in addition, added the following, fifth, claim for relief:

Petitioner's Sixth Amendment right to the assistance of counsel was violated where trial counsel failed to investigate and discover the informant, John Marantic's mental health disease or defect prior to trial, and failed to introduce evidence regarding the nature of same illness during trial.

Petitioner then filed an amended petition, asserting the same claims as in his initial petition but adding additional facts.

Respondent filed a motion for summary judgment and dismissal, arguing that the petition should be dismissed because Petitioner's fifth claim, asserting ineffective assistance of trial counsel, was unexhausted.  In response, Petitioner moved to stay proceedings in his habeas action while he exhausted state remedies.  The Court granted the motion, stayed proceedings in the habeas action, and administratively closed the case.  See Doc. 27.

Petitioner returned to the trial court and filed a motion for relief from judgment, raising the following claims:

1.   Defendant Bell's conviction for second-degree murder must be reversed where pre-trial orders of the trial court prohibiting witness Kelli Crocket and Shantaina Herron from communicating with defense counsel deprived defendant of assistance of counsel at a critical stage of the proceeding.

2.   Defendant Bell's conviction must be reversed where before opening arguments from prosecutor or defense counsel, trial court acting as fact finder was exposed to and relied upon testimony from Keisha Dixon in determining Bell's guilt, contravening Bell's due process right to a fair trial.

3.   Defendant Bell's [] due process rights were violated where the trial court admitted as substantive evidence against him statement made by Shantaina Herron to police reciting the confession of co-defendant Collins.

4.   The acts, errors and omissions of trial counsel severally and cumulatively contravened defendant Bell's right to the assistance of counsel during trial and other critical stages of the proceedings, interfering with his right to a fair trial.

5.   The acts, errors and omissions of assigned appellate counsel contravened the defendant's right to the effective assistance of counsel on appeal.

The motion for relief from judgment was heard by the same trial court judge that had presided over Bell's bench trial in 1999.  The trial court denied Petitioner's motion for relief from judgment on the grounds that he demonstrated neither good cause for failure to raise the new claims in his appeal by right nor any legal prejudice, as required for a court to grant relief pursuant to the Michigan rules for post-conviction relief.  Opinion & Order Denying Defendant's Motion for Post-Appeal Relief, Sept. 26, 2005.

3

The trial court specifically rejected ineffective assistance of appellate counsel as cause for Petitioner's failure to have raised the new issues in his direct appeal, stating that failure to raise every non-frivolous issue does not constitute ineffective assistance of appellate counsel and appellate counsel's decision not to raise an issue is presumed to be sound appellate strategy. *Id.* at 2. The trial court also denied Petitioner's motion for an evidentiary hearing under *People v. Githner*, 390 Mich. 436 (1973). *Id.* Petitioner's application for leave to appeal the trial court's order was denied by both the Court of Appeals and the Michigan Supreme Court on the grounds that the petitioner had failed to meet the burden of establishing entitlement to relief under MCR 6.508(D).

On October 2, 2007, Petitioner returned to federal court and filed a third petition. The petition raised the same claims as those raised in Petitioner's post conviction motion for relief from judgment. None of these claims were presented in Petitioner's direct appeal and the only a sub-category of his current claim four was in the initial habeas petition that the Court had stayed. Petitioner did not seek leave to amend his petition before adding his new habeas claims. The state did not object to the amendment, however, either for failure to seek leave to amend or on statute of limitations grounds.

The petition was assigned case number 07-14197 (the "2007 case") and randomly assigned to a different judge. The 2007 case was thereafter reassigned to the undersigned as a companion to the 2003 case. The Court reinstated the 2003 case, consolidated the 2007 case with the 2003 case and closed the 2007 case.

Respondent filed a response, arguing that habeas relief is not warranted because Petitioner has procedurally defaulted all of the claims in his current habeas petition.

### III.  Factual Background

Petitioner's conviction arises out of a home invasion, assault, robbery and murder that took place on the east side of Detroit during the overnight hours of March 16-17, 1998.  Police arriving at 12314 Kilbourne in the early morning hours of March 17, 1998 found a man dead of a gunshot wound to the head, arms bound and lying in the dining room, and a woman, screaming, kneeling down and holding his legs.  The decedent was Kemp Dwayne Traylor and the woman was Keisha Dixon.

Dixon told police that several masked men entered the house.  According to Dixon, two men stayed with her and forced her to lie on the floor while one or more of the men ordered Traylor to show them were he had money.  Dixon heard a gunshot and heard the sounds of Traylor being dragged through the house.  Traylor was brought back downstairs again and forced to lie on top of Dixon.  Dixon felt Traylor being lifted off of her, and heard another gun shot.  When she finally raised her head, she saw Traylor lying dead, with a gun shot wound to his head.  Dixon ran down the street to the house of Traylor's sister and brother in law.  Traylor's brother-in-law returned with Dixon to the house on Kilbourne.  Shortly thereafter, the police arrived.

Dixon was unable to identify any of the men involved and the case languished for more than a month.  Then, in late April 1998, officers responding to a domestic violence call on Lakepointe Street in Detroit encountered Shantaina Herron.  According to the officers, Herron told them that her boyfriend, Corey Collins, beat her and threatened to kill her, and that he had admitted killing a guy on Kilbourne.  Collins was arrested on his return to the Lakepointe house, under the alias of Benny Wright.

According to several Detroit Police Officers, Herron admitted that she had pawned a bracelet, and told police that Collins told her he had gotten the bracelet from the

Kilbourne address.  The bracelet was retrieved from the pawn shop and later identified as belonging to Traylor.  The officers testified that Herron later drove with police officers and identified several locations that she believed might hold evidence from the robbery. At one of these locations, Ryan Street in Detroit, police seized several guns that were ultimately identified as belonging to Traylor.  Petitioner was arrested at the Ryan Street location, under the name of Tokoyo Moore, along with another man, James Langford, and Langford's girlfriend Kelli Crockett.

At Petitioner's preliminary examination, the prosecution connected him to the Traylor homicide primarily through the testimony of two men who had been jailed with Petitioner prior to his indictment.  Danny Shannon and John Marantic each testified that Petitioner had separately told them that he had been involved in a murder and robbery and gave them details that corresponded with details of the Kilbourne Street homicide. Based upon their testimony, and the hearsay statements given to the police by Herron and Dixon, Petitioner was bound over for trial.

The cases against Petitioner and Collins were consolidated for trial, but the trial court granted the defenses' motion for separate juries.  Following an evidentiary hearing, the trial court denied Petitioner's motion to suppress the testimony of the two jailhouse informants on the grounds that the informants were acting as agents of the police and that Petitioner's statements to the informants were taken in violation of his Sixth Amendment rights.  The trial court also ruled admissible as substantive evidence a statement made by codefendant Corey Collins to his girlfriend Shantaina Herron, admitting involvement in a homicide, which Herron repeated to police officers responding to a domestic violence call.  The trial court ruled that Collins' statement to Herron that "I killed this guy on Kilbourne" was admissible against Petitioner as a

6

statement against interest, and Herron's statement to Officer Quinn recounting Collins' statement was admissible under the excited utterance exception to the hearsay rule.

Petitioner was tried jointly with Collins in a trial that began on April 27, 1999. Petitioner waived his right to a jury trial on the second day of jury selection. The trial proceeded with Collins' case being tried before a jury and Petitioner's case being tried as a bench trial.

In closing, the defense argued that the informants were either police plants or opportunists. Defense pointed out the inconsistencies between the informants' testimony and other facts in evidence and highlighted the questionable background of the informants. Defense argued that the court should find implausible the government's assertion that the defendant told details of the crime to two men who had each acted as informants in other cases and each had long criminal records. Defense also argued that if the court were to credit the informers' testimony, the trial court would also have to conclude that Keisha Dixon was involved, since both informants testified that Petitioner told them that the robbery was set up by a girl. Defense argued that Dixon's demeanor and credibility and the facts in the record weighed against such a conclusion. The defense also pointed out that Marantic had spent two weeks on the psychiatric ward before his contact with Petitioner, and suggested that fact also cast doubt on Marantic's credibility.

The trial court issued a decision from the bench on June 17, 1998. The trial court stated that it would not consider any of Shannon's testimony in reaching its verdict because it did not have the opportunity to see Shannon and judge his demeanor and credibility. The trial court went on to hold that, based on the testimony of Marantic, it was convinced beyond a reasonable doubt that Petitioner shot Traylor. The trial court

stated that it did know exactly how the breaking and entering occurred and found that the armed robbery and home invasion counts were not proved beyond a reasonable doubt.  The court found Petitioner guilty of second degree murder and felony firearm, but acquitted him of the charges of home invasion and armed robbery.

## IV.  Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a  case differently that the Supreme Court on a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."  *Id.* at 409.  A federal court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  *Id.* at 411.

## V.  Analysis

### A.  Procedural Default

Respondent argues that the Court is barred from reviewing any of Petitioner's claims because he failed to raise them in his appeal of right and fails to meet his burden of showing that his appellate counsel was ineffective for failing to raise them in that proceeding.  Upon review, the Court agrees with the Respondent that relief for Petitioner's habeas claims is barred by Petitioner's procedural default.

A federal court may issue the writ of habeas corpus when a state prisoner is held in custody in violation of the federal constitution or laws.  The writ may not issue, however, if adequate and independent state law grounds justify the prisoner's detention. *Edwards v. Carpenter*, 529 U.S. 446, 454 (2000) (Breyer, concurring).  Where a state court declines to pass on a federal claim because the claim was not presented in the manner prescribed by the state's procedural rules, a federal court may review the claim under certain, highly limited, circumstances.

> The doctrine applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement.  In these cases, the state judgment rests on independent and adequate state procedural grounds.

*Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) *(citations omitted).*

In order to determine whether a claimed procedural default constitutes an adequate and independent state-law basis justifying Petitioner's detention, the district court must apply the analysis set forth by the Sixth Circuit in *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986).  The district court must first determine that there is a state procedural rule applicable to petitioner's claim with which petitioner failed to comply.  *Id.* at 138.  Second, the court must determine whether the state courts actually enforced the state procedural sanction.  *Id.*  Third, the court must decide whether the state

procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of the federal constitutional claim. *Id.*

"[T]he existence of cause for a procedural default ... ordinarily turn[s] on whether the prisoner can show that some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Alternately, a federal court may reach a petitioner's federal claims, even absent cause for the procedural default, if the petitioner can establish that failing to review the claim would result in a fundamental miscarriage of justice. *Coleman,* 501 U.S. at 750. This exception applies in cases where a constitutional violation has most likely resulted in the conviction of one who is actually innocent of the crime for which he was convicted. *Dretke*, 541 U.S. at 393. Absent either cause and prejudice or a finding of actual innocence, a federal court may not reach the merits of a claim that has been procedurally defaulted in state courts by a state prisoner. *Williams v. Anderson*, 460 F.3d 789, 805-06 (6th Cir. 2006).

### B. Application of the Procedural Default Doctrine

A review of the record reveals that all claims in Petitioner's current petition were procedurally defaulted in the state courts, with the sole exception of his ineffective assistance of appellate counsel claim. Petitioner did not assert on direct appeal any of the claims asserted in his motion for postconviction relief. This omission violated state procedural rule MCR 6.508(D)(3), which precludes relief from judgment "if the motion...alleges ground for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence" unless the defendant shows good cause for failing to raise the claims in his initial appeal. The trial court relied on MCR 6.508(D)(3) in denying Petitioner's motion for post-conviction relief, stating that all

10

of petitioner's claims, with the exception of his claim of ineffective assistance of appellate counsel, could have been brought in petitioner's direct appeal and that petitioner's claim of ineffective assistance of appellate counsel failed to establish cause and prejudice for his procedural default.  The Michigan Court of Appeals and Supreme Court each denied leave to appeal citing MCR 6.508(D).  Where the state appellate courts orders are brief form orders citing Rule 6.508(D), this Court must look to the last reasoned state court opinion to determine the basis for rejecting the defendant's claims. *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).  The last reasoned opinion is the trial court's September; 17, 2006 order, which relies upon the procedural bar of MCR 6.508(D)(3) to deny petitioner's claims.  The habeas claims are thus procedurally defaulted and this Court is barred from considering them unless Petitioner demonstrates cause for his default and prejudice, or, alternatively, a fundamental miscarriage of justice.

### C.  Overcoming Procedural Default - Cause and Prejudice

Procedurally defaulted claims may be considered in federal habeas corpus proceedings only if the petitioner shows "cause" for failing to comply with the state's procedural rules and "prejudice" resulting from the alleged violation of federal law or if he shows that the federal court's refusal to consider the claim would result in a "fundamental miscarriage of justice."  *Hargrave-Thomas v. Yukins*, 374 F.3d 383,  387 (6th Cir. 2004) (citing *Coleman v. Thompson*, 501 U.S. at 750) (other citation omitted). Petitioner does not argue that the exception for a fundamental miscarriage of justice applies.  Instead, Petitioner argues that the default of his habeas claims in state court should be excused because he had ineffective appellate counsel on his direct appeal.

11

Ineffective assistance of appellate counsel may be sufficient cause to raise an ineffective assistance of counsel claim.  *Howard v. Bouchard*, 405 F.3d. 459, 478 (6th Cir. 2005).  Ordinary attorney error does not, however, constitute cause.  *Murray*, 477 U.S. at 488.  Rather, in order to constitute cause to excuse a procedural default, the alleged error by appellate counsel must amount to constitutionally ineffective assistance of counsel under the test enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984). *Coleman*, 501 U.S. at 753-54.

It is important to note at the outset that in refusing to grant Petitioner's post-conviction motion, the trial court denied Petitioner's ineffective assistance of appellate counsel claim on the merits.  Because this claim was decided on the merits, when addressing this claim the Court must employ the deferential standard of review contained in 28 U.S.C. 2254(d).  The question before the Court, therefore, is not whether Petitioner's appellate counsel was ineffective, but rather whether the *state court's holding* that Petitioner's appellate counsel was not constitutionally ineffective was contrary to or an unreasonable application of *Strickland*.  See *Harrington v. Richter*, ___ U.S. ___, 131 S. Ct. 770, 786 (2011).

In *Strickland*, the Supreme Court established a two-pronged test for determining whether a criminal defendant has received ineffective assistance of counsel.  First, the convicted person must prove that counsel's performance was deficient, which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Strickland*, 466 U.S. at 687.  Second, the convict must show that counsel's deficient performance prejudiced him.  Prejudice is established by a "showing that counsel's errors were so serious as to deprive the defendant of a fair trial."  *Id.*  The same test applies to claims of ineffective

assistance of appellate counsel.  *Smith v. Jago*, 888 F.2d 399, 405 n.1 (6th Cir. 1989).

The question is "whether an attorney's representation amounts to incompetence under

'prevailing professional norms,' not whether it deviated from best practice or most

common custom."  *Harrington*, 131 S. Ct. at 788 (quoting *Strickland*, 466 U.S. at 690).

### D.  Whether Petitioner has Demonstrated Cause Through Ineffective Assistance of Appellate Counsel

Petitioner argues that appellate counsel was constitutionally ineffective for failing to

raise on direct appeal the claims he asserted in his post-conviction motion and now

asserts in his habeas petition.  As such, Petitioner argues that appellate counsel's

ineffectiveness is cause to excuse his procedural default.  Petitioner also argues that

the claims were such that a failure to raise them resulted in prejudice, thereby

overcoming his procedural default.  In order to resolve whether Petitioner has overcome

his default, it is necessary to examine the merits of each of the claims that Petitioner

argues should have been brought by his appellate counsel.  As discussed in detail

below, the Michigan court's holding that appellate counsel was not ineffective was not

an unreasonable application of *Strickland*.  As appellate counsel was not constitutionally

ineffective, the Petitioner cannot establish cause for his procedural default of his habeas

claims, nor can he show prejudice.

### 1.  Failure to Appeal Pre-trial Orders of the Trial Court Allegedly Prohibiting Prosecution Witnesses Kelli Crockett and Shantaina Herron from Communicating with Defense Counsel

Petitioner argues that appellate counsel should have appealed his conviction on

the basis that the trial court prohibited two of the prosecution's witnesses, Kelli Crockett

and Shantaina Herron, from communicating with Petitioner's counsel.  Petitioner has

submitted bond documents for Herron and Crockett, dated December 21 and December

23, 1998, respectively, which releases each on $50,000 bond, subject to conditions that

13

each check in with the officer in charge, reside with her mother, and have no dealings with anyone except the officer in charge, her attorney, and the prosecutor. See Petition, Exh. B. Petitioner argues that these documents prohibited his counsel from interviewing Crockett and Herron, that Crockett and Herron were crucial to his defense, and that he was prejudiced by the failure of his counsel to interview these witnesses. Petitioner therefore says that his appellate counsel was ineffective for failing to raise this claim on appeal.

Petitioner's appellate attorney was not ineffective for failing to raise this claim for two reasons. First, the documents do not demonstrate that a release of these witnesses on such conditions would have prevented Petitioner's counsel from interviewing the witnesses, as the documents do not prevent the defense from dealing with the witnesses through their counsel. Second, the Petitioner does not establish that he suffered any prejudice by having been unable to interview these witnesses. As noted above, Shantaina Herron's testimony at trial was completely favorable to the Petitioner, in that she completely denied making the out-of-court statements that implicated her boyfriend, Collins, and by inference, Petitioner. As to Kelli Crockett, the only portion of her testimony that was in any way detrimental to Petitioner was her testimony that both the Petitioner and Collins were friends with Langford and came over to the house on occasion. As the Petitioner was actually arrested in Langford's house, Crockett's testimony that the two were friends could have had little effect on Petitioner's conviction.

Because the Petitioner neither establishes that his trial attorney was actually prevented from communicating with either Herron or Crockett before the trial or that he was in any way prejudiced by such lack of communication, there is no merit to

14

Petitioner's claim that his appellate counsel was ineffective for failing to raise this claim on appeal.

### 2. Failure to Appeal the Trial Court's Hearing Testimony from Keisha Dixon Prior to Opening Arguments in Bell's Case

Petitioner argues that his appellate counsel was ineffective for failing to appeal his conviction on the grounds that the trial court, acting as factfinder, was "exposed to and relied upon" the testimony of Keisha Dixon before opening statements were held in Bell's case. The factual predicate of this claim arises from the fact that the trial court simultaneously conducted a bench trial for Petitioner and a jury trial for codefendant Collins. Following opening arguments to Collins' jury, the trial court permitted the prosecution to go directly to the testimony of Keisha Dixon, rather than excusing the jury and having opening argument in Petitioner's bench trial. After Dixon's first day of testimony, the trial court excused Collins' jury for the day and then had the parties give their opening statements in Petitioner's case. Bell argues that he was prejudiced by this procedure because Dixon's initial testimony was "extraneous" to Petitioner's trial and not evidence in his case "because Ms. Dixon was not sworn-in in Defendant's trial" and therefore the trial court "could not rely upon Ms. Dixon's unsworn testimony in determining [Bell's] guilt." Petition 9.

Petitioner's appellate counsel was not constitutionally ineffective for failing to raise this claim on direct appeal because the claim lacks merit. Contrary to Petitioner's contention, Dixon was under oath when she testified in the prosecution's case-in-chief. Petitioner's trial had already commenced. The fact that the trial court heard some testimony prior to opening statements by the State and the defense did not violate Petitioner's constitutional rights. There is no clearly established Supreme Court precedent requiring that opening arguments occur prior to any testimony being taken.

Furthermore, given that Petitioner had a bench trial, and the trial court was well aware of the law that needed to be applied, the Court can find no possible prejudice to the Petitioner stemming from the fact that the trial court had the parties delay their opening arguments in Bell's trial until after Dixon's initial testimony.  The Michigan court's holding that Petitioner's appellate counsel was not constitutionally ineffective for failing to raise this claim on petitioner's direct appeal was not erroneous.

**3.  Failure to Appeal the Trial Court Admission as Substantive Evidence Against Bell a Statement Made by Shantaina Herron to the Police Reciting the Confession of Co-defendant Collins**

Petitioner claims that appellate counsel was constitutionally ineffective for failing to raise the claim that his due process rights were violated when the trial court admitted as substantive evidence against him statements made by Shantaina Herron to the police reciting the confession of Corey Collins.

While Petitioner's appellate counsel did not raise this issue in Petitioner's direct appeal, co-defendant Corey Collins did raise this issue in *his* direct appeal.  See *People v. Collins*, No. 220544, 2001 WL 1134735 at * 1-3 (Mich. App. 2001).  Addressing the precise claim and precise testimony at issue here, the Michigan Court of Appeals denied Collins' claim and held that the trial court properly admitted as substantive evidence Shantaina Herron's statement to the police reciting Collins' confession under the excited utterance exception to the hearsay rule.  *Id.* at *3.  Given that the Michigan court rejected the precise argument that Petitioner asserts here on the exact same facts, the Michigan courts' holding that Petitioner's appellate counsel was not ineffective for failing to raise the same claim was not an unreasonable application of clearly established United States Supreme Court precedent.

16

Petitioner, however, argues that his appellate counsel should have appealed the admission of Collins' statement to Herron in which Collins admitted committing the Kilbourne street murder, on the grounds that Collins' statement to Herron was "testimonial" in nature, and therefore violated his confrontation rights under the Sixth Amendment. This argument fails for numerous reasons. The admission in Petitioner's case of Collins' statement to Herron did not violate the confrontation clause because it was not "testimonial" in nature and therefore not subject to the confrontation clause. *See Crawford v. Washington*, 541 U.S. at 36, 51 (2004) (casual statements to acquaintances not testimonial because not bearing testimony). Herron's statement to the police recounting Collins statement is not subject to confrontation clause problems because she appeared at trial. "[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." *Crawford*, 541 U.S. at 59, n. 9 (citing *California v. Green*, 399 U.S. 149, 162 (1970)). Petitioner's appellate counsel thus had no arguable basis under the Confrontation Clause for appealing Petitioner's conviction. His failure to so appeal therefore did not therefore accord ineffective assistance.[1]

### 4.  Failure to Appeal Ineffective Assistance of Trial Counsel

Petitioner's fourth claim argues that appellate counsel was ineffective for failing to include a claim of ineffective assistance of trial counsel in Petitioner's direct appeal. In support of this claim, Petitioner cites nine instances of claimed ineffectiveness.

---

[1]A second hearsay statement of Herron's, made in a written statement to the police, was also used at Petitioner's trial. The prosecution read much of the statement into the record during the cross-examination of Herron, but the trial court ruled that the statement was not substantive evidence but rather went solely to impeaching Herron's inconsistent in court testimony. As the trial court did not permit the substantive use of this second statement, the Court does not address this second statement.

17

Petitioner cites the following as the bases for his claim of ineffective assistance of trial counsel:  (1) trial counsel's advice to petitioner to waive his right to a jury trial and his failure to adequately advise petitioner of the consequences of waiving his right to a jury trial; (2) failure to cross examine Officer James Forrester; (3) failure to investigate statement of Cynthia Hunter and call her as a witness at trial; (4) counsel's concession that Keisha Dixon was not an accomplice to the murder of Kemp Traylor; (5) failure to present an alibi defense and to call Katrina Evans, Tumorris Bell and Tito Evans; (6) failure of trial counsel to advise the defendant of his right to testify; (7) failure of trial counsel to interview Lieutenant Carter; (8) failure to object to the prosecution's non-production of Perry Leon Johnson, whose latent prints were found on broken pieces of a chess board found in the decedent's house; and finally, (9) counsel's failure to fully investigate before trial John Marantic's mental problems.

As stated above, the Court must accord a high degree of deference to the conduct of trial counsel, the conduct of appellate counsel, and the findings of the Michigan court that counsel was not ineffective.  Given this extremely deferential level of review, the Court has little difficulty in concluding that the Michigan courts did not unreasonably apply *Strickland* in holding that appellate counsel was not constitutionally ineffective for failing to raise ineffective assistance of trial counsel on appeal.  The individual claims of ineffectiveness are discussed below.

> **a. Trial Counsel's decision to not cross-examine James Forrester,  to not investigate and call Cynthia Hunter, to concede that Keisha Dixon was not implicated, and to limit inquiry into Marantic's mental problems**

Petitioner asserts that his trial counsel was ineffective because he failed to cross-examine James Forrester, he failed to investigate Cynthia Hunter and call her at trial, to concede that Keisha Dixon was not implicated in Kemp Traylor's murder, and he failed

18

to sufficiently investigate Marantic's mental problems before trial.  All of these allegations of ineffectiveness pertain to the issue of trial strategy.

Petitioner's counsel's primary strategy at trial was to isolate and discredit the testimony of the two jailhouse informants, Danny Shannon and Marantic.  This strategy was reasonable, given that the testimony of the two informants was the only thing that directly connected Petitioner with the crime.  Each informant stated that Petitioner was assisted in the  crime by a woman - girlfriend or acquaintance - who gave Petitioner information and/or was present at the scene.  Petitioner's trial counsel argued in closing that the informants' testimony was incorrect on this point, and unworthy of disbelief, in part because the testimony presumed that Keisha Dixon was not a victim of the crime but rather was involved.  Petitioner's trial counsel argued that both the evidence found at the crime scene and Dixon's demeanor argued against Dixon being involved in the crime, and further argued that this fact undermined the credibility of both informants.  Any effort to discredit Dixon's testimony or to suggest her involvement would contravene this sensible trial strategy.

Furthermore, any effort to discredit Dixon's testimony would likely have been unsuccessful.  Dixon's testimony was corroborated by the physical evidence that was recovered at the crime scene, including bullet casings and blood stains found in locations where Dixon testified the intruders had taken Traylor.  Dixon's testimony was also corroborated by the testimony of the police officers on the scene and by Traylor's brother-in-law, who all testified that Dixon appeared traumatized and hysterical, and did not appear to be fabricating.

The acts of his trial counsel that Petitioner complains about now, agreeing that Dixon was not involved, failing to investigate and call Cynthia Hunter as a witness,

failing to cross-examine James Forrester, and failing to further investigate John Marantic's mental problems, are all consistent with the primary strategy of undermining the testimony of the informants.  For example, Petitioner has submitted a police report that appears to show that Cynthia Hunter gave a statement to Investigator Barbara Simon in which she told Simon that she overheard Dixon arguing with Traylor shortly before his death, and telling him that Traylor would "get what [he has] coming sooner than [he thinks]."  See Petition, Exhibit D.[2]  Petitioner argues that his trial counsel should have interviewed Hunter and presented this document and her testimony at trial.  It is clear, however, that such testimony would be counterproductive, in that any evidence that served to incriminate Dixon would also serve to incriminate Petitioner, given that the informants' each testified that Petitioner was assisted by a woman, and Shannon's testimony placed that woman at the scene of the crime.  Establishing that Dixon was involved would not serve to exonerate Petitioner.

The same reasoning applies to Petitioner's claim that his counsel was ineffective for acknowledging that the crime occurred in the manner that Dixon testified that it occurred, and that Dixon was not involved.  Petitioner's trial counsel could reasonably conclude that any suggestion that Dixon was involved in the crime would only serve to reinforce the reliability of the informants' testimony, particularly that of Danny Shannon, and undercut the argument that the reliable information contained in the informants' testimony was supplied by the police.

The decision not to cross-examine Officer Forrester falls in the same category.  Forrester was the only officer who testified that he encountered Keisha Dixon outside of

---

[2]The statement attached to the Petition appears to be an excerpt from a larger document.  The date is sometime in 1998, but cannot be further discerned from the document submitted with the Petition.

the Traylor residence.  All other officers testified that Dixon was inside the house when they arrived.  Cross-examination of Forrester would only serve to discredit Dixon, which would run contrary to trial counsel's reasonable strategy.

Finally, Petitioner complains about the failure of his trial counsel to further investigate Marantic's mental problems and to further flesh them out at the trial.  The decision not to further delve into Marantic's mental issues, however, is consistent with the sound trial strategy of discrediting Marantic's testimony against Petitioner. Marantic's testimony against Petitioner is credible largely because it contains details about the Traylor homicide that could only have come from someone acquainted with the homicide, either Petitioner or the police.  While the prosecution argued that the details of the homicide came from Petitioner, the defense sought to establish that Marantic was either a police plant, and supplied with details of the crime by the police, or was an opportunist who somehow gained knowledge of the details of the crime and then sought to incriminate Petitioner as a means of ingratiating himself with the police. Neither theory of the defense is assisted by dwelling on the informant's psychiatric problems.  The defense reasonably introduced some evidence that Marantic was in the psychiatric ward prior to his incarceration with Petitioner as a general attack on Marantic's credibility.  Additional development of this issue, however, could reasonably be considered to be counterproductive because it would not deal with the factual consistencies between Marantic's testimony and the facts of the crime, and because it would undermine the twin theories of the defense, that Marantic was selected by the police to be an informant or that Marantic fabricated Petitioner's statements in the hope of obtaining a deal.

Overall, these decisions by trial counsel are objectively reasonable.  The failure of trial counsel to conduct the trial in the manner argued by the Petitioner does not mean that trial counsel was ineffective.  As an ineffective assistance of counsel claim could not reasonably have been established on these facts, Petitioner's appellate counsel was not ineffective for failing to raise such a claim.  The holding of the Michigan court that petitioner's appellate counsel was not ineffective is a reasonable application of *Strickland*.

### b.  Trial Counsel's Failure to Call Alibi Witnesses

Petitioner says trial counsel was constitutionally ineffective for failing to call three alibi witnesses:  Petitioner's sisters Katrina Evans and Tumorris Bell, and Petitioner's cousin Tito Evans.  Petitioner has submitted affidavits from Tumorris Bell and Tito Evans, dated August 2005 and September 2005 respectively, in support of this argument.  Both affiants aver that they would testify that Petitioner was with all three during the time that the home invasion and murder on Kilbourne took place and through the next morning.  Petitioner also supplies an undated "Alibi Witness List" that listed the Evanses and Tumorris Bell as potential alibi witnesses, with the statement that these witnesses will testify that Petitioner was with them in Ypsilanti, Michigan at the time of the offense.  Third Amended Petition Exhibit E.  Petitioner also lodged a "Notice of Rebuttal to the Defense of Alibi," filed by the State on the eve of trial, which lists witnesses to rebut the alibi.  Third Amended Petition Exhibit F.

It is Petitioner's burden to show that his appellate counsel was ineffective for failing to argue that his trial counsel was ineffective for failing to call the proposed alibi witnesses.  The record below provides insufficient support for this contention.  Neither Petitioner's initial habeas petition filed in 2003 in the Court nor his first amended petition

22

filed in 2004 mentioned these alibi witnesses or contended that they should have been called.  The only mention of these alibi witnesses contained in the record prior to the filing of Petitioner's post-conviction motion in 2005 is the two documents referenced above, the notice of alibi witnesses filed by the defense and the prosecution's rebuttal. The affidavits supplied by Petitioner are dated in late 2005, more than seven years after the events to which they refer and more than six years after Petitioner's trial, and thus form no part of the record for purposes of Petitioner's initial appeal.[3]  Petitioner supplies no evidence, and fails to even argue in his petition, that he ever brought the alibi witnesses to the attention of his appellate counsel in 1999.  A review of the brief filed by Petitioner's appellate counsel shows that appellate counsel rigorously reviewed and scrutinized the record, and provided the Michigan Court of Appeals a detailed 32-page fact section that accurately summarized Petitioner's preliminary examination, motion hearings and trial.  Given that there is no evidence that Petitioner ever brought the alibi witness issue to the attention of his appellate counsel, and the alibi witness issue is hardly evident from the record, the Michigan courts' did not unreasonably apply *Strickland* in holding that appellate counsel was not acting outside the bounds of competence for failing to argue that trial counsel was ineffective for failing to call these witnesses.

---

[3]A review of the transcript of Petitioner's sentencing reveals that the three purported alibi witnesses provided the sentencing court with letters in support of the defendant, which the trial court reviewed prior to passing sentence.  Nothing in the record suggests that these witnesses affirmed their alibi in these letters.  The trial court could reasonably conclude that a strong alibi defense would have been brought to the trial court's attention at this time, rather than seven years later.

### c. Trial Counsel's Failure to Advise Petitioner of His Right to Testify and to Call Petitioner to Testify on His Own Behalf

Petitioner argues that his trial counsel failed to advise him of his right to testify on his own behalf, and appellate counsel was constitutionally ineffective for failing to raise this issue on appeal. There is nothing in the record that support the assertion that his trial counsel failed to advise him of his right to testify and nowhere in the record is there any evidence or even assertion that Petitioner informed his appellate counsel that his trial counsel failed to advise him of his right to testify. Given these facts, the Michigan courts did not unreasonably apply *Strickland* in holding that appellate counsel was not constitutionally ineffective for failing to raise this issue on appeal.[4]

### d. Failure to Investigate Lieutenant Carter and to Call Him at the Pre-trial Suppression Hearing and Trial

Petitioner says that trial counsel was ineffective for failing to investigate and call Lieutenant Carter to testify at the pre-trial suppression hearing and trial, and appellate counsel was ineffective for failing to raise this failure on appeal. The evidence at the pretrial suppression hearing and at trial established that Lieutenant Carter of the cold case squad received the initial information that Marantic had information relating to the death of Kemp Traylor, that Carter interviewed Marantic, and that Carter subsequently forwarded this information to Officer Barbara Simon, who was assigned to the Traylor homicide. Petitioner says that trial counsel failed to investigate Carter and failed to call

---

[4]The decision not to have Ptitioner testify appears to have been reasonable based upon the record. Petitioner's sentencing transcript recounts several convictions over the course of the five years preceding the conviction at issue here, including a conviction for armed robbery that apparently occurred when he was 14 years old and several convictions for concealed weapons under various aliases. A competent defense attorney could have reasonably recommended against the defendant testifying in light of the danger posed by potentially being cross examined about these convictions, which would arguably be admissible under Mich. R. Evid. 609.

Carter at trial.  Petitioner says that he was prejudiced by this failure because the investigation could reveal whether any deals were made to Marantic by Carter.

Each witness called at the preliminary examination, suppression hearing and trial denied that the police offered any deal to Marantic.  Petitioner's contention that Carter may have offered testimony of a deal is pure speculation, unsupported by any evidence in the record.  A reasonable attorney might conclude that Petitioner was better served by not having another witness testify that Marantic contacted the police voluntarily and was not offered any inducement to testify.  The Michigan courts thus did not unreasonably apply *Strickland* in holding that Petitioner has failed to establish that Petitioner's appellate counsel was ineffective in failing to raise this ineffective assistance of counsel claim on appeal.

### e. Failure to Investigate Perry Johnson and Failure to Object To the Prosecution's Non-production of Johnson

Bell asserts that his trial counsel was constitutionally ineffective for failing to investigate Perry Johnson and failing to object to the prosecution's failure to produce Perry Johnson for trial.  According to the petition, Detroit police officer Francis lifted four latent prints from broken pieces of a chess board found in the TV room of the second floor of Traylor's house, which prints were subsequently identified as belonging to Perry Leon Johnson.  Johnson was listed by the prosecution among the intended witness at trial.  Johnson was not called as a witness, and Petitioner's trial counsel waived the production of Johnson at trial and instructed Petitioner to affirm the waiver.[5]  Petitioner says that his trial counsel should have investigated Johnson's apparent involvement in Traylor's murder.

---

[5]These fact are drawn from the Petition.  Trial record does not reflect that fingerprints belonging to Mr. Johnson were found at the crime scene.

Petitioner is mistaken.  Any decision by Petitioner's trial counsel to forgo an investigation of Perry Johnson and to acquiesce to the prosecution's non-production of Johnson falls within the wide range of reasonable professional assistance.  The Michigan courts could reasonably have concluded that the fact that Johnson's fingerprints appeared on a chess board in the decedent's house did not suggest that Johnson was involved in the Traylor murder any more than it suggested that Johnson played chess with Traylor.  Furthermore, any involvement by Johnson in Traylor's murder would not exonerate Petitioner given that the facts showed that more than one person was involved in the murder.  Given the tangential relevance of the Johnson fingerprints, Petitioner's trial counsel was not ineffective for failing to investigate Johnson and for waiving the prosecution's production of Johnson.  Correspondingly, Petitioner's appellate counsel was not ineffective for failing to claim on appeal that trial counsel's failure to pursue Johnson constituted ineffective assistance of trial counsel. The Michigan court's conclusion was thus a reasonable application of *Strickland*.

### f.  Cumulative Trial Errors

Petitioner argues that the cumulated errors of his trial counsel justify habeas relief. In this Circuit, claims of cumulated trial errors are not cognizable under § 2254.  *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005).  Thus, this argument does not merit further discussion.

### VI.  Conclusion

For the reasons stated above, Petitioner has defaulted all of his claims by failing to raise them in accordance with Michigan procedural law, and has failed to establish cause and prejudice, through ineffective assistance of counsel, or a fundamental miscarriage of justice to excuse the default.  Accordingly, the petition is DENIED.

26

As jurists of reason could not dispute this conclusion or find that Petitioner's claims deserve to proceed further, the Court DECLINES to grant a certificate of appealability under 28 U.S.C. § 2253(c)(2).[6] *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

However, if Petitioner chooses to appeal the Court's decision, he may proceed *in forma pauperis* on appeal because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

SO ORDERED.


Dated:  February 24, 2011              _s/Avern Cohn_____
                                       AVERN COHN
                                       UNITED STATES DISTRICT JUDGE



I hereby certify that a copy of the foregoing document was mailed Bryce Bell, 293535, Pine River Correctional Facility, 320 N. Hubbard, St. Louis, MI 48880  and to the attorneys of record on this date, February 24, 2011, by electronic and/or ordinary mail.

                                       _s/Julie Owens_____
                                       Case Manager, (313) 234-5160

---

[6] "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

27